UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×

ANDREW DWYER,

        *Plaintiff*,

ALLIANCE BUILDING SERVICES, LLC,

        *Defendant*.

------------------------------------------------------------------------×

16 CV 0451

**COMPLAINT**

Plaintiff Andrew Dwyer, by his counsel, The Harman Firm, LLP, alleges against Defendant Alliance Building Services, LLC as follows:

## PRELIMINARY STATEMENT

1. In this employment discrimination action, Plaintiff Andrew Dwyer ("Plaintiff" or "Mr. Dwyer") seeks damages and costs against Defendant Alliance Building Services, LLC ("Defendant" or "Alliance") for discriminating against Plaintiff by terminating his employment due to his disabilities, violating the Americans with Disabilities Act of 1990 ("ADA"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101–131 ("NYCHRL").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331, as it arises under the Americans with Disabilities Act ("ADA"), as codified at 42 U.S.C. §§ 12101 *et seq*.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYCHRL.

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to Plaintiff's claims occurred within this district.

5.      All conditions precedent to maintaining this action have been fulfilled.  A charge of discrimination was filed with the Equal Opportunity in Employment Commission ("EEOC").  The EEOC issued a Right-to-Sue Letter dated November 4, 2015 relating to the discriminatory acts described in this Complaint.  This action was properly instituted within ninety (90) days of the issuance of the Right-to-Sue Letter.

## TRIAL BY JURY

6.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

7.      At all times relevant hereto, Plaintiff Andrew Dwyer was and is a resident of Kings County in the State of New York.

8.      Upon information and belief, at all times relevant hereto, Defendant Alliance is a corporation organized under the laws of New York State.

## STATEMENT OF FACTS

9.      Mr. Dwyer was seriously injured while serving in the United States armed forces and working as an intelligence agent.

10.     As a result of these injuries, Mr. Dwyer suffers from mental and physical conditions affecting his brain, including traumatic brain injury (TBI), seizure disorder,

migraines, and post-traumatic stress disorder (PTSD), arising from injuries sustained during his time serving overseas.

11. In and around June 2014, Mr. Dwyer was hired by Classic Security, a subdivision of Alliance, as an Account Executive.

12. Mr. Dwyer's responsibilities included overseeing the security procedures and staffing of approximately two (2) dozen buildings serviced by Alliance.

13. In and around December 2014, shortly after Mr. Dwyer's hire, he received a positive performance evaluation and a holiday bonus.

14. Alliance's Vice President, Anne Fahy, was impressed with Mr. Dwyer's work, even telling him that he reminded her of herself and praised his potential to grow with Alliance.

15. Heretofore, Mr. Dwyer regularly suffers from migraines due to his injuries and had missed approximately two to three days of work during his tenure with Alliance due to intolerable migraines.

16. Ms. Fahy and Mr. Dwyer had a positive working relationship and met on a regular basis to discuss his job duties and performance.

17. Mr. Dwyer began receiving additional assignments, including drafting a manual for other account executives at Alliance. Mr. Dwyer was eager to show his capabilities and honored that he was trusted with more responsibilities.

18. Mr. Dwyer performed his job duties admirably during his employment with Alliance.

19. On or about May 12, 2015, Mr. Dwyer's fiancée, unable to reach Mr. Dwyer by phone, called Alliance to make sure he was well. Mr. Dwyer's fiancée explained to Alliance that Mr. Dwyer suffered from a seizure disorder related to his injuries suffered overseas, and she was concerned that he may have fallen ill.

20. Mr. Dwyer was not in distress; he was unreachable because his cellphone had run out of battery.

21. On or about the next day, May 13, 2015, Mr. Dwyer was unable to work because of painful migraines, and called out sick.

22. Mr. Dwyer had not disclosed his underlying medical condition and disabilities to Alliance at that time, only informing them that he was ill and needed a day off.

23. On or about May 14, 2015, Mr. Dwyer decided to formally disclose his disabilities to Alliance's human resources department ("HR") to ensure that an accommodation could be made and to protect himself with a plan of action should he ever suffer a seizure or other illness while on the job.

24. Mr. Dwyer brought medical documentation from Veterans Affairs to the meeting with HR to confirm his diagnosis. HR did not accept his documentation, and did not prepare any sort of plan for Mr. Dwyer in the event that he had a seizure or other medical emergency at work.

25. Later that day, Mr. Dwyer attended a regularly scheduled weekly meeting with Ms. Fahy. At that meeting, Ms. Fahy provided Mr. Dwyer with four (4) tickets to a Mets baseball game for the following week so that he could entertain Defendant's clients at that game.

26. After delivering the Mets tickets to Mr. Dwyer, Ms. Fahy asked him if he was feeling well following his absence the previous day; Mr. Dwyer then disclosed his disabilities to her.

27. Ms. Fahy expressed surprise at learning of Mr. Dwyer's disabilities.

28. In and around the next day, May 15, 2015, Mr. Dwyer was called into a meeting with Ms. Fahy and HR. Mr. Dwyer was terminated on the spot, the purported reason being that he did not have a good relationship with Ms. Fahy. This reason is utter subterfuge.

29. Mr. Dwyer was praised by Defendant for his excellent performance and was given additional job responsibilities.

30. Mr. Dwyer never received a negative performance review, warning, performance improvement plan, or any other indication from Alliance or Ms. Fahy that his employment was in jeopardy or that his work was subpar.

31. Alliance did not engage with Mr. Dwyer in a discussion regarding the impact his disabilities might have on his work performance, failing to engage in the required interactive process.

32. Alliance did not attempt to accommodate Mr. Dwyer upon learning of his disabilities, but instead terminated his employment the very next day after his disclosure.

33. Alliance's termination of Mr. Dwyer is transparently discriminatory, and in violation of, *inter alia*, the ADA and NYCHRL.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Employment Discrimination in Violation of the ADA

34. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 33 with the same force as though separately alleged herein.

35. The ADA mandates that no employer discriminate against a qualified individual on the basis of an actual or perceived disability in regard to the terms and conditions of his employment.

36. Defendant discriminated against Plaintiff by terminating him because of his disabilities.

37. Defendant failed to engage in the mandatory interactive process under the ADA.

38. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

39. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### SECOND CAUSE OF ACTION
### Disability Discrimination in Violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101–8-131

40. Plaintiffs hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 39 with the same force as though separately alleged herein.

41. NYCHRL prohibits discrimination against a person because of the actual or perceived disability of a person.

42. Defendant discriminated against Plaintiff by terminating Plaintiff's employment based on his disabilities.

43. Plaintiff was and is fully capable of performing his job responsibilities.

44. Defendant failed to accommodate Plaintiff and to engage in the mandatory interactive process under the NYCHRL.

45. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

46. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## Request for Relief

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

A. for the first claim, actual damages to be determined at trial, but in no event less than $500,000;

B. for the second claim, actual damages to be determined at trial, but in no event less than $500,000;

C. an award of compensatory and punitive damages;

D. pre-judgment and post-judgment interest;

E. attorneys' fees and costs; and

F. such other and further relief as the Court deems just and proper.

Dated:  New York, New York
January 21, 2016

By: *[signature]*

Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
*Attorneys for Plaintiff*
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com